BROWN & SHARPE MFG. CO. v. COATES CLIPPER MFG. CO.

(District Court, D. Massachusetts. March 21, 1912.)

No. 51 (361).

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—HAIR-CLIPPER.

The Carleton patent, No. 481,254, for a hair-clipper having a short push spiral spring in the frame of the clipper to hold the two levers in closed position, discloses patentable invention, but is not infringed by the devices of the Coates patents, Nos. 588,954 and 802,070, in which a pull spiral spring is used.

2. PATENTS (§ 289*)—SUIT FOR INFRINGEMENT—LACHES.

Delay by the owner of a patent for 13 years after an alleged infringing device had been put on the market, during all of which time it was described in catalogues sent out to the trade generally, before commencing a suit for infringement held such laches as to bar the right to relief.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 467–469; Dec. Dig. § 289.*

Laches as a defense in suit for infringement, see notes to Taylor v. Sawyer Spindle Co., 22 C. C. A. 211; Richardson v. D. M. Osborne & Co., 36 C. C. A. 613.]

In Equity. Suit by the Brown & Sharpe Manufacturing Company against the Coates Clipper Manufacturing Company. On final hearing. Decree for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Wilmarth H. Thurston, for complainant.

William A. Macleod, William A. Copeland, and George P. Dike, for defendant.

COLT, Circuit Judge. This bill charges infringement of letters patent No. 481,254, issued August 23, 1892, to Cyrus Carleton, for an improved hair-clipper.

The claims in issue read as follows:

"1. A hair-clipper having a movable cutter and a pivoted operating lever therefor, with a push spiral spring within the cover or frame close to the pivot to act on the said lever.

"2. A hair-clipper having a frame, movable cutter, and operating lever, with a pocket in the frame containing a push spiral spring to act upon the operating lever.

"3. A hair-clipper having a movable cutter and an operating lever therefor, a push spiral spring within the frame or cover close to the pivot, and means for retaining the spring in place when the clipper is taken apart and the operating lever is removed.

"4. A hair-clipper having a frame, a movable cutter, and an operating lever therefor, in combination with a push spiral spring, the frame having a pocket with removable cover or thimble to retain the spring, the inner end of the pocket being provided with shoulders, whereby the clipper may be taken apart without removing the spring."

The main feature of the Carleton patent, which differentiates it from the prior art, consists in the use of a push spiral spring, instead of a torsional spring, in the frame of the clipper, to act upon the pivoted operating lever. A subordinate feature consists in the means for retaining the spring in place when the clipper is taken apart and the operating lever is removed.

With respect to the spring the patent says:

"The form of spring most commonly employed in these hair-clippers is the torsion-spring—such as illustrated, for instance, in my patent, No. 216,998 —and so long as such a spring remains in good order it works well. Such a spring is, however, very apt to break when in use, thus causing expense, trouble, and delay to remove and replace it, especially in the hands of the average user who is not a mechanic.

"Spiral push-springs have been used in some cases, but placed between the handles at some distance back from the frame and held in place by guide-pins on the handles. Such construction is objectionable for a number of reasons: The spring is long, and has a long movement in compression and expansion, and consequently there is uneven action, the coils of the spring rub more or less upon the guide-pins, and there is a tendency for the spring, which is thus located at some distance from the axis of the bent operating lever, to cant the latter unfavorably upon its axis. In addition, the spiral spring as heretofore used is apt to become clogged by hair and other dirt.

"In my invention I make use of a spiral push-spring, and, while retaining all its advantages, I overcome the objections to the construction above noted in the manner which I will now describe. In the first place I make use of a comparatively short spiral push-spring $S$, which I arrange within the frame or cover quite close to the axis of the movable operating lever, the spring being interposed between the movable handle and the frame."

The defenses to this suit are: (1) Want of invention in the Carleton device; (2) noninfringement; (3) laches.

[1] 1. The idea of substituting a push spiral spring for a torsional spring in a clipper was not new with Carleton, for he states in his pat-

ent that such a spring had been used in clippers "in some cases." Again, the use of such springs to act upon a pivoted lever was old in other arts, as, for instance, in the Davis patent, No. 184,463, for conductors' punches. Carleton, however, was the first in the clipper art to locate "a comparatively short spiral push-spring" "within the frame or cover quite close to the axis of the movable operating lever," as he states in his specification. This idea of Carleton, taken in connection with the changes in arrangement of the parts of the clipper necessarily involved in the carrying out of this idea, constituted an invention, especially in view of the fact that the Carleton improvement remedied many of the defects in the old clippers, and in view of the further fact that this form of clipper has gone into extensive commercial use, and has supplanted to a large extent the old forms of clippers. In my opinion, therefore, the claims of the Carleton patent which are in issue in this suit are not void for want of patentable novelty.

2. The defendant makes two forms of clipper: Clipper No. 1, which is covered by the Coates patent, No. 588,954, issued August 31, 1897; clipper No. 2, which is covered by the Coates patent, No. 802,-070, issued October 17, 1905.

The fundamental distinction between the Coates clippers and the Carleton clipper is that Coates uses in his clippers a pull spiral spring in place of a push spiral spring. These two spiral springs are different in form and mode of operation. In a push spiral spring the coils are open wound. In a pull spiral spring the coils are close wound. A push spiral spring exerts a pushing action, while a pull spiral spring exerts a pulling action. In the Carleton clipper the push spiral spring is compressed by the hand of the operator in moving the operating lever towards the stationary lever, and upon the release of this hand pressure the operating lever is pushed back to its normal position by the action of the spring. In the Coates clipper No. 1, the coils of the pull spiral spring are pulled open by the hand of the operator in moving the operating lever towards the stationary lever, and upon the release of this hand pressure the operating lever is pulled back to its normal condition by the action of the spring. The spring action of the pull spiral spring in Coates clipper No. 2 is the same as in No. 1, although the connections through which the spring exerts its force on the movable lever are different.

The pull spiral spring appears to be somewhat superior to the push spiral spring, for the reason that, being close wound, it occupies a smaller space; also for the reason that it has less initial tension or strain.

Infringement in this case turns upon the question whether the claims of the Carleton patent should be so construed as to cover the Coates clippers. In other words, can it be said that the Coates pull spiral springs of clipper No. 1 and clipper No. 2, are the equivalent of the push spiral spring of the Carleton patent?

Previous to the issue of the Carleton patent in suit for a push-spring clipper, and the Coates patents already referred to for pull-spring clippers, both Carleton and Coates had taken out patents for torsion-spring clippers.

About 1892 it occurred to Carleton that a push spiral spring located in the frame of the clipper would be an improvement upon the old torsion-spring clippers, and he proceeded to organize a clipper having this form of spring, and to obtain a patent therefor. The substitution of this form of spring required a rearrangement and readjustment of many of the parts of the old clipper.

Some time subsequent to the Carleton invention it occurred to Coates that a pull spiral spring located in the cover of the clipper would be an improvement upon the old torsion-spring clipper and upon the Carleton push-spring clipper, and he proceeded to organize a clipper having this form of spring and to take out a patent therefor. The substitution of this form of spring required a rearrangement and readjustment of many of the parts of the then existing clippers. In 1905 Coates took out another patent for an improved form of this type of clipper.

The Coates No. 1 and No. 2 clippers do not, in my opinion, infringe the Carleton patent, for the following reasons: First. Because the problem which Carleton sought to solve was the insertion of a push spiral spring in the frame of the clipper, and in the specification and claims of his patent he expressly limits his invention to a "push spiral spring." On the other hand, the problem which Coates sought to solve was the insertion of a pull spiral spring in the cover of the clipper. Second. Because, looking at the state of the clipper art at the time of the Carleton invention, it cannot be said that a pull spiral spring was in any sense a known equivalent of a push spiral spring. Third. Because to hold that the defendant's clippers infringe would be to say, in effect, that the Carleton patent covers every clipper in which there is embodied an expanding and contracting spring—a proposition which is unwarranted in view of the state of the art, the scope of the Carleton invention, and the specific language of the specification and claims of his patent.

[2] 3. This bill was filed in June, 1907. In 1894, or 13 years before this suit was brought, the defendant commenced to put upon the market clippers like Exhibit No. 1, and since that time these clippers have been openly sold by the defendant, and by the trade, and they have been shown by cuts and described in catalogues and circulars distributed to the trade.

Upon the state of facts presented in the record upon this point, I am of the opinion that the laches of the complainant is a bar to any relief under this bill with respect to clipper No. 1. As to whether this defense applies with respect to clipper No. 2, which was not put upon the market until 1904, I express no opinion.

A decree may be drawn, dismissing the bill, with costs.